This is a case where, although the plaintiff suffered from disabilities, he was in a job he could perform quite well despite those disabilities, and he ran into trouble only because his employer, State Farm, insisted over his objection on moving him to a new position which it knew he would be unable to perform because of his disabilities, at least unable to perform without some accommodation. I'm going to address the disability discrimination cause of action first. The evidence showed that State Farm knew before it assigned the plaintiff to the bridge team, which was the new position, that working in that type of position caused the plaintiff extreme stress and anxiety. State Farm argues that plaintiff's evidence only showed that it knew that he had suffered stress and anxiety at that time, but that it was not caused by his working in that position. But that, in fact, is not the case because the State Farm gentleman who recommended plaintiff for that position, Bill Riggs, testified that he had had discussions with the plaintiff before the bridge team was selected in which the plaintiff informed him of the stress and anxiety that he had suffered and that it was caused by his working in the ACC previously. State Farm assigned him to that position anyway. The reason given for the assignment was that plaintiff had prior ACC experience. State Farm argues that that's a legitimate non-discriminatory reason, but plaintiff submits that given the fact that State Farm knew that he had a disability that prevented him from performing that job, a jury could infer that that's discrimination even though he had prior experience. To me, it would be like saying, okay, here's somebody who did a job before that involved heavy lifting, but they know he's got a bad back. The fact that he had experience isn't going to change the fact that he's got a bad back and cannot now perform that job. State Farm also argued, at least in the court below, that this was not an adverse employment action because it fell within the same job description. But in our brief, we cited the Burlington case in which the United States Supreme Court said that even though a job is in the same category or in the same description, that does not mean it cannot be an adverse employment action because different jobs, even though within the same category, can have different functions and duties. Some may be more distasteful than others. And in this case, plaintiff could do the field rep job because he'd done it for a number of years and it didn't bother him. It didn't cause him the same stress and anxiety, but he couldn't do the ACC job without suffering stress and anxiety. And also, plaintiff presented substantial evidence that these two jobs did, in fact, differ in their function and their duties. Finally, State Farm did not offer plaintiff any accommodation to enable him to perform the bridge team or the ACC job. At the same time, it later refused to allow him to attempt that job part-time, giving us the reason the fact that plaintiff hadn't been medically cleared to do that job, even part-time. The Dr. Cullen had an addendum on his, to whom it may concern, memo that said that the, that Mr. Grants could work 6 hours. Now, is 6 hours the total time? How many work hours does he get out of that? What was his ordinary, what was his typical day? 8 hours, 9 hours? For that job, I'm trying to, it was a, I can't remember if it was 6 hours and 45 minutes or 7 hours and 45 minutes, including a 45-minute lunch break. Okay, so if he would have been almost... So it would have been... It would have been more than half-time, certainly. It would have been close to full-time. And did State Farm have a, was there anything in the record that suggests that State Farm had anybody else that was only working, let's say, three-quarters time or half-time? Could he have taken three-quarters time and then taken the other quarter time as sick leave? If Mr. Grants, if Mr. Grants said, look, I can, I, for the next 2 to 3 months, as Dr. Cohen said, until I can transition to full-time, I can work three-quarters time. I can be there 6 hours a day. Yes. And, and then my question is, does, does he still, would he still have sick leave? Do we have to take sick leave for the other quarter of the day? I don't know that that's addressed in the record. I don't see what would prevent him from doing that, because he had, he was entitled to the sick leave. Would that have extended the sick leave that he had available to him? Would that have extended the time on his sick leave? Well, it certainly would have extended, I mean, I'm not sure I understand your question. It would have extended it in the sense that he would have been using it up at a much slower   And so it would have, it would have lasted longer. I think that's my question. You said it much better than I did. Yes. Was there an actual conversation with State Farm about working half-time or part-time? I'm sorry, Miss, about? Was there an actual conversation with State Farm about the possibility of working part-time? I don't know of anything in the record that indicates there was an act. You're talking about an oral conversation. Yes. I don't know of anything in the record that indicates that. The only thing in the record... Was there a written conversation? Well, there was Dr. Cohen's note. Okay. Is there any response from State Farm? Not in the record, no. So the venom is just hanging out there. It was presented to State Farm. Well, yeah, it was sent to State Farm. I understand that. Yes. So then it just hung out there. Yes, and State Farm said, you know, he would not permit him to... Well, now you're saying State Farm said. That's what I asked. Was there any conversation at all between State Farm and Grants about the possibility of working part-time? There's evidence in the record that before this, Mr. Grants had had conversations with State Farm and that this had been discussed. I believe it was with Mr. Dunn, the possibility of returning to work part-time. And that's why Mr. Grants went to Dr. Cohen and got the note. Okay. After the note was sent, was there any conversation or exchange in writing between the two of them about the possibility of working part-time? I don't recall. I mean, clearly, they did not. I don't recall anything in the record to that effect. Which means there wasn't, there isn't anything, right? To my knowledge, yes, there isn't anything, except that they didn't permit him to return part-time. But I don't know of any conversation of them saying why or of them saying your note is not, is inadequate. There's no conversation explaining to him that we don't think that this note is adequate or there's something else that we think conflicts with it or anything of that nature. Dunn comments after he sees the Cohen note that there was, that it was kind of, that it was kind of confusing, that it was, that it was, he had, there was some ambiguity in his mind as to whether or not Grants had been cleared to come back to work. Yes. Given that Cohen has supplied this note, who has the burden of proceeding at that point? Does Grants have to go to Dunn and say, I've been cleared to work part-time, I just need two or three months and I'll be back to work full-time, and that's what I'm asking for? Or does Dunn and, or somebody else at State Farm have the obligation of saying, we don't, we can't have somebody on the bridge team working only six hours, it's bad for morale, it's bad for, we don't have enough parking spaces, whatever the reason is, either you have to be full-time or you have to be at home full-time. Because nobody seemed to, nobody seemed to work, neither side here seemed to be working for anything in the middle. It all, it seemed to be an all or nothing proposition. Grants said, I can't come to work full-time, State Farm said you have to work full-time, and it doesn't look like either side made any attempt to get it, to get something in the middle. So who had the burden of sort of proceeding or raising this once Dr. Cohen submitted that note? I believe State Farm had the burden, and the reason is they never communicated to him that we think there's a discrepancy or an ambiguity. There's nothing in the record that indicates that that was ever communicated to the plaintiff or to Dr. Cohen or to anyone. Did, did Grants, did Grants at any time, once, once he was sent home by State Farm and told to stay at home until he could come back full-time, did Grants ever follow this up by, by sending somebody an email, by calling somebody and saying, what about working part-time, isn't there something I can do, or could I work six hours in the office and two hours at home making out-calls, because I understand I can't, I can't get the incoming calls? After the, after the refusal. After the Cohen letter. I don't know of anything in the record to that effect, because he had been denied the, the opportunity to work part-time, and he had also been denied the opportunity to work part-time because he was required to come back full-time? Because he was not medically cleared, according to State Farm. Steve, I have the same question. He didn't get to work part-time, but was he denied it? Yes. Where? I don't know. I can't give you the, I mean, he, he was told, he said in his declaration that he was, they did not permit him to work part-time. Well, yeah, he didn't work full-time, there's no question about that. Part-time. Part-time. They didn't offer him a part-time job, but. But I, I guess I'm missing, I don't believe there's any dispute that they, that they would not allow him to work part-time. Okay. I believe that's undisputed. Yeah, but I think, I think my point is the same, I think the same point that Judge, Judge Reimer has expressed here very well is that, is that we've got a failure to communicate here. I don't see anything, I don't see anything from grants saying, hey, what about, how come I can't work part-time? Or did anybody consider letting me work six hours a day for the next two months, and then coming back? And I don't, I don't see anything from State Farm, on the other hand, that says, we've considered, we, we think the Cohen note is ambiguous, and until you can be cleared to work full-time, we don't think you can work. Or anything from State Farm that says, your request to work part-time is hereby denied, show up for work on Monday morning and be prepared to stay all day. I don't see anything coming from either side here on this. There's a huge void here on this whole question. Well, I guess my, my, at this point, I'm, you know, this was not an issue that was raised below and, and litigated below, and I'm having a little problem understanding how that figures into the analysis at this point. Well, if it wasn't, then why is it here? I'm sorry? If it were not raised in the district court, why is it here? Because it was raised, State Farm has, I mean, State Farm has said, they gave us a reason, their reason for denying. Yeah. Was that he was not medically cleared. They said they had kind of conflicting information. And what, what makes that discrimination? I'm saying that is discrimination. I'm not saying that's the discrimination. The discrimination is transferring him to the bridge team. What I'm saying is that that's evidence of, that, that a pretext in saying we transferred him to the bridge team because he had prior experience. And when you say, in other words, all of this evidence, they transfer him to the bridge team. He says, I can't do it. They don't provide accommodation. Then he says, okay, I'll try it part time. And they say, you're not medically cleared. All of that is conflicting. That's my point. My point is that this is evidence of pretext. Now, I'm talking at this moment about the discrimination cause of action, not about the accommodation, failure to accommodate. Part of what's got me a little puzzled is how you want us to look at something that they said and did quite a bit later as shedding light on the reason they gave at the time. I don't care. Transferred to the bridge. I'm not asking you to look at that. They offered that. If we don't have that in the record, I think that the evidence is that he provided something and they didn't. And then they never allowed him to work part time. And there's no explanation why they didn't. Okay. I mean, that seems to me to be the case. Okay. I see I'm running out of time. I'd like to save some time, although I don't want to shortchange the failure to accommodate, which we've talked a little bit on as far as the part time job. But there are other things on failure to accommodate that certainly come into play. Didn't State Farm offer him a different job? State Farm. And he refused it? State Farm offered him an estimating coordinator job. Yes. Which was much below his previous pay grade, the pay grade that existed at the time. And yes, he did refuse that. Wasn't that an attempt at accommodation? But he didn't need. I mean, my point is he didn't need that accommodation if they had not moved him into the bridge team job. It was an attempt at accommodation, but there's a jury question as to whether it's reasonable because it was so far below his pay grade. And as far as discrimination goes, he didn't need that accommodation if they hadn't moved him onto the bridge team. I mean, the whole problem arises because they move him into a job that they know he had problems doing before because of the stress and anxiety that it caused him. They caused the problem in the first place. And then they terminate him because of sick leave expired, which is not a legitimate non-discriminatory reason because it arises out of the disability. So they had no legitimate reason for terminating him. You better save a few seconds. I did. Thank you. Mr. Green. Good morning, Your Honor. Thank you. Yes, State Farm immediately did contact the doctor and did follow up on it and asked specifically to the doctor, can he do the ACC job? And the doctor said no. Now, that's not in the record for a reason. They never argued it in the trial court. So we didn't have it in the record. That's why we filed a motion to supplement. If it's not in the record, how can we possibly consider it here today? Well, we filed a motion to supplement the record, Your Honor. And the reason we did it is if they make a new argument that we had no opportunity to respond to, if we look at the district court's decision, there's nothing in there that suggests that they were arguing that there should be a part-time assignment. How is the district court going to know and how are we going to know? And I don't expect my learned colleague on the other side to, knowing what the record says, I mean, we know it's there. I have the documents. We took the deposition to try to represent that there was no communication. There was, and to represent exactly what that was. Their claim has shifted. There's lots of other claims that shift. They're constantly shifting their claim. Now they want to make an argument that he shouldn't have been assigned a bridge team to begin with, but that wasn't part of their DFEH or EEOC claim. So, you know, so in our view, Your Honor, is that this argument shouldn't be accepted because it was not raised below. And yes, Your Honor, we did offer an estimatics position. And this new argument about part-time, as you point out, Your Honor, would have been a reduction in pay because he would have gotten less pay anyway. So the argument that they shouldn't, he shouldn't consider the estimatics position, but it's not just that he didn't consider the estimatics position. He wouldn't consider any position outside of Irvine, nothing. You know, State Farm was very reasonable. 500 days of sick leave out of 800 days offers him position, extra leave beyond his regular leave, what they call permission morale, offer him, ask him about a position outside of the area. So we submit, Your Honor, that Mr. Grants was provided much accommodation. And some of what counsel is arguing seems to be in the genre of interactive process claim, which was not pled. And Judge Guilford pointed out that that was not pled, and on that basis it was dismissed, and that wasn't challenged on appeal. So, Your Honor, with that said, I think we've addressed the issues that were not in the brief. If there are any questions, we'd be happy to respond. Any questions? No. Okay, thank you, Mr. Green. Mr. Gossin? It seems to me that the request for part-time work was sort of a last-ditch effort, and we really haven't had a chance to talk about what happened before that. He was moved from a position he objected at that time. Now, they could have accommodated him simply by leaving him in that position, but they didn't. You know, they refused to do that, and I don't see why, under those circumstances, that's a jury question as to whether that was reasonable or unreasonable. Okay, we understand your position. Thank you, counsel. The matter just argued will be submitted.
judges: Alarcon, Rymer, Bybee